Hely, J.
I. INTRODUCTION
The jury found that the defendant Ahearn Painting Company, Inc. was negligent and that its negligence was a cause of John Cushing’s injuries. The jury also determined that the plaintiff was negligent. In answer to a special question comparing only the plaintiff and Ahearn, the jury determined that ninety percent of the cause of the plaintiffs injuries was attributable to Ahearn, and ten percent was attributable to the plaintiff. The jury determined that the plaintiffs damages were $800,000.
Ahearn has filed a motion for j udgment notwithstanding the verdict, a motion for relief from judgment, and a motion for a new trial. The motion for judgment notwithstanding the verdict and the motion for relief from judgment are denied. The plaintiffs motion for a new trial is also denied with respect to the liability issues. On the damages issue, however, the jury’s $800,000 verdict was against the weight of the evidence in that the damages are excessive. Ahearris motion for a new trial is allowed on the damages issue unless the plaintiff accepts a judgment with damages of $300,000, statutory interest on this amount from the commencement of the action, and ordinary costs. The findings in this Memorandum of Decision will address only the new trial order on the damages issue.
II. THE DAMAGES VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND GROSSLY EXCESSIVE.
The $800,000 damages verdict in this case was so grossly excessive that it represents a miscarriage of justice unless there is a new trial on damages or a remittitur. See M.R.Civ.P. 59(a); Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 292 (1993); D’Annolfo v. Stoneham Housing Authority, 375 Mass. 650, 660-62 (1978); J.W. Smith & H.B. Zobel, Rules Practice §§59.2-59.4 (8 Mass. Practice 1977 and Supp. 1994). In reaching this conclusion, the court has considered all the evidence in the case including the testimony of the plaintiff and Doctor Robert Day on the injuries and their effects on earning capacity, pain, suffering and interference with personal life.
In addition to the court’s consideration of the evidence as a whole, there were also several specific aspects of the damages evidence from the plaintiffs economist that unfairly contributed to the excessiveness of the damages verdict.
(1) The lost future earnings opinion of Christopher Ruhm, Ph.D. was based on inadequate information on the plaintiffs physical condition and limited work impairment. Indeed he had no information on the plaintiffs condition other than his belief that the plaintiff had a “health impairment.” Doctor Ruhm formulated his opinion based on articles about workers with health impairments without any specific regard to the nature of the impairments of the workers studied or the nature of this plaintiffs impairment. Doctor Ruhm had not been provided with and had never considered any medical records, medical opinions, depositions, or reports about this plaintiff and his particular physical condition. (Tr. 7-22, 7-34.)
(2) Doctor Ruhm estimated that there was a $648,101 difference between the plaintiffs expected earnings and what his earnings would have been had he not been injured. This loss estimate was based on the period from the trial to the time when he expected the plaintiff would be finishing his work life. There was no indication in the evidence that Doctor Ruhm in any way considered periods of unemployment or underemployment caused by economic disruptions or personal factors unrelated to the plaintiffs injuries. Doctor Ruhm compared what he expected the plaintiff would earn at a bottling plant if he had not been injured to expected earnings in a service job with some assumed health impairment. An average worker in either type *142 of employment with forty-three years of work life ahead of him can reasonably expect some periods of unemployment or underemployment caused by layoffs, force reductions, plant or store closings, business failures or takeovers, technology changes, or other economic and business factors beyond the worker’s control. An average worker can also objectively expect some periods in his work life when he will be unemployed or underemployed due to individualized personal, family and health factors, unrelated to the injuries in question. These factors affect such things as where a worker lives, continuity of work, attitude towards seeking promotions or employment changes, and a variety of other issues related to how, when and where he works. There was no indication in the evidence that Doctor Ruhm considered such factors in his estimates of expected earnings of an average worker in the Maine bottling plant or in a service job.
(3) Doctor Ruhm added to expected wages at a bottling plant a factor of 28.6 percent for fringe benefits such as health care and social security or private pension benefits. The 28.6 percent fringe benefits factor was not based on any information from either the bottling plant or the Reinerg painting contractor, the plaintiffs two prior employers. Doctor Ruhm had no information whatsoever on the employer costs of fringe benefits at the bottling plant or at Reinerg. It was unfair and substantially prejudicial to permit the plaintiffs expert to add a factor of 28.6 percent to expected earnings without relating it to readily available information on actual fringe benefits at the plaintiffs two employers before the accident.
Ahearn’s motion for judgment notwithstanding the verdict is denied.
(4) Dr. Ruhm assumed that the plaintiff would cease working at age fifty-five with no knowledge whatsoever about the nature of the plaintiffs physical condition and limited work restriction. (Tr. 7-28.) It was impermissible guesswork for him to assume that the plaintiff would stop working at fifty-five. This guesswork was an important factor in Doctor Ruhm’s opinion on loss of expected earnings.
(5) Without any knowledge of the plaintiffs physical condition or work restriction, Doctor Ruhm also assumed that his injuries from the accident would cause him to lose an average of ten weeks per year during his work life. (Tr. 7-19.) This, too, was speculation. It was a significant impermissible factor in Doctor Ruhm’s lost earnings opinion.
(6) Doctor Ruhm’s opinion on lost earnings did not take into consideration that actual wages are subject to federal and state income taxes while the damages award would not be subject to such taxes. The court declined Ahearn’s request for an appropriate instruction on this point. In many cases the lack of such an instruction may not be an abuse of discretion or reversible error under Griffin v. General Motors Corp., 380 Mass. 362, 368-70 (1980). Nevertheless, on Dr. Ruhm’s assumption of thirty-three years of partial lost earnings and ten years of total lost earnings, the effect of a tax-free award is substantial. In this case it was unfair and materially prejudicial to Ahearn to not give an appropriate instruction on the income tax issue.
(7)Finally, Doctor Ruhm testified to the present value (time of trial) of expected lost future earnings. He should have been required to reduce the expected lost future earnings amount to its value at the time of commencement of the action, January 25, 1990. Griffin, supra, 380 Mass. at 367. Under G.L.c. 231, §6B, the plaintiff is entitled to twelve percent interest per year from the commencement of the action on the entire amount of the verdict. This statute gives the plaintiff an interest rate that is far higher than what any prudent investor could obtain today. If a plaintiff is to have the benefit of a twelve percent interest rate, it can only be fairly applied to the value of his losses at the time of the commencement of the action.
For all of the above reasons, the court concludes that the $800,000 damages verdict is against the weight of the evidence and so excessive as to represent a miscarriage of justice. After a careful consideration of the entire case, I conclude that a damages finding of $300,000 is in the upper tier of what a reasonable jury could determine the damages to be on the evidence in this case.
III. ORDER
Ahearn’s motion for relief from judgment is denied.
Ahearn’s motion for a new trial is denied on the liability issues but is allowed on the damages issue because the damages verdict is excessive. A new trial is ordered on the damages issue unless the plaintiff files by May 31, 1994, a remittitur under M.R.Civ.P. 59(a) agreeing to accept a judgment with damages of $300,000, statutory interest on this amount from the commencement of the action, and ordinary costs.